United States District Court
Southern District of Texas
**ENTERED**
June 19, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANASTASIIA ERMURAKI and AUREL ERMURAKI, Plaintiffs, | § § § § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-4169 |
| KENNETH CUCCINELLI, *et al.*, Defendants. | § § § § | |

**ORDER**

**I.  Background**

The Defendants in this matter are officials with the United States Department of Homeland Security ("DHS") and/or the United States Citizenship and Immigration Service ("USCIS") and will be collectively referred to as "the Government" or "Defendants." The Plaintiffs Aurel and Anastasiia Ermuraki (hereinafter referred to collectively as "Plaintiffs" or individually by first name) are husband and wife. The former is a native of Moldova and the latter is a native of Russia. They came to the United States on July 21, 2016 by virtue of six-month B-2 tourist visas. Their visas expired on January 20, 2017. Three days before the expiration of his visa, Aurel filed an asylum petition (Form I-589) with USCIS. Anastasiia applied as a derivative applicant. USCIS acknowledged receipt of the petition the next day. These applications remain pending.

Later Anastasiia applied for a diversity visa program for fiscal year 2019 (October 1, 2018–September 30, 2019). This time Aurel's application was derivative of her application. This program allows up to 55,000 immigrants (5,000 of whom must be from Nicaragua) to be selected randomly. 8 U.S.C. § 1153(e)(2). The Department of State received over 14 million applications for those 50,000 slots.

1

In order to whittle down the number of applicants, the Department of State randomly selected 87,610 individuals who were then invited to apply for diversity visas. If they did not qualify or were not chosen, then there was no additional benefit from the fact that they applied.

In May of 2018, Anastasiia was informed she had been randomly selected to apply. Importantly, she was not awarded the visa itself, but only allowed the right to apply. Anastasiia applied by filing a Form I-485. She was interviewed in March of 2019, and in April she was rejected because she failed to meet two criteria. First, she was not in a lawful immigration status at the time she applied. Second, she had not maintained lawful immigration status since entering the United States. By this time, Anastasiia had overstayed her tourist visa by over two years and had not maintained lawful status since the expiration of her tourist visa in January of 2017. Due to the fact that Anastasiia did not qualify for a diversity visa, her application was rejected, and Aurel's derivative application was consequently rejected (although it seems clear that had he directly applied he would have been rejected for the same two reasons). Both Plaintiffs filed Motions to Reconsider, and both were denied. No attempt to date has been made to remove the Plaintiffs and, as noted above, their asylum applications are still pending.

Plaintiffs filed this lawsuit in October of 2019—after the Government's fiscal year ended on September 30, 2019.[1] Prior to the Government answering, the Plaintiffs filed what they entitled a Verified Complaint for Injunctive and Declaratory Relief. (Doc. No. 15). The Government responded to this Complaint by filing a Motion to Dismiss (Doc. No. 20), Plaintiffs have responded (Doc. No. 21), and the Government has replied (Doc. No. 22). It is this motion that the Court addresses here.

---

[1] The Government claims this Court could dismiss this case as moot because the diversity visa numbers are no longer available. 22 C.F.R. § 42.33(f). Defendants reason that since all of the 2019 numbers have been allocated and the Government is now into fiscal year 2020, there is no relief for this Court to grant. The Court need not rule on this basis as it finds the Government's position on the substantive issues to be meritorious.

## II. Procedural Standards

A defendant may file a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* The court may also consider documents that a defendant attaches to a motion to dismiss, if the documents are "referred to in the plaintiff's complaint and are central to [the] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500 (5th Cir. 2000); *see also Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 926 (N.D. Tex. 2014) (Lynn, J.).

Plaintiffs basically contend that they should be entitled to legal permanent residency status and they request that this Court order the Defendants to approve their applications and grant them that status. The alleged basis for this relief is that they claim under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, that the Defendants' actions in refusing to grant them diversity status were "arbitrary, capricious, an abuse of discretion, and not in accordance with law." (Doc. No. 15 at 14). *See also* 5 U.S.C. § 706(2)(A).

The scope of review under the arbitrary and capricious standard is basic. An agency must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and choices made. Stated differently, an agency acts in an arbitrary and capricious manner if it relies on factors which Congress has not intended that it consider, entirely fails to consider an important aspect of the problem, offers an explanation that runs counter to the evidence, or if its decision is so implausible that it cannot be explained as being based upon the agency's expertise. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The party challenging the decision has the burden of proof.

## III. Discussion

Title 8 Section 1255 is the pertinent statute[2] which governs the adjustment of status from an applicant to one of legal permanent residence. Significantly, it has certain requirements for one to gain permanent residence status. Two of these provisions are relevant to this case. They bar an adjustment of status for an alien:

- who is in unlawful immigration status on the date of filing the application for adjustment of status (the "unlawful immigration status bar"); or

---

[2] The applicable regulation is 8 C.F.R. § 245.1, which states: "The following categories of aliens are ineligible to apply for adjustment of status to that of a lawful permanent resident . . . (5) any alien who on or after November 6, 1986 is not in lawful immigration status on the date of filing his or her application for adjustment of status . . . (6) any alien who files an application for adjustment of status on or after November 6, 1986, who has failed (other than through no fault of his or her own or for technical reasons) to maintain continuously a lawful status since entry into the United States."

4

- who has failed (*other than through no fault of his own or for technical reasons*) to maintain continuously a lawful status since entry into the United States (the "failure to maintain lawful status bar").

8 U.S.C. § 1255(c)(2) (emphasis added).[3]

One point is quite significant to the outcome of this case—if an alien falls within any one or more of the categories listed in § 1255(c)(2), he or she is ineligible for adjustment of status. *Id.* Anastasiia was barred from attempting to adjust her status pursuant to the diversity lottery because she had no lawful immigration status on the date she filed. She was also barred because she had failed to continuously maintain a lawful entry status since entry into the United States. Either reason was sufficient to deny her claim.

The reason the Court emphasizes the independence of these two clauses is that the Plaintiffs expend most of the briefing on the motion to dismiss attacking the Government's interpretation of the clause "other than through no fault of his own or for technical reasons." This clause modifies the failure to maintain lawful status bar. It does not apply at all to the unlawful immigration status on the date of filing bar.

The Plaintiffs entered the United States on tourist visas. A few days before the visas expired, Aurel applied for asylum with Anastasiia applying derivative of his application. Those applications are still pending and are not at issue here. Nevertheless, after their tourist visas expired, the Plaintiffs had no lawful immigration status. Consequently, the Plaintiffs do not have lawful status and, more importantly, did not have lawful immigration status when the diversity application was filed.

---

[3] A third provision disqualifies those who have participated in unauthorized employment activities. *See* 8 U.S.C. § 1255(c)(2). There is no claim that the unauthorized employment provision has any relevance here, and therefore it will not be addressed.

In this lawsuit, Plaintiffs do not make a cogent argument why this factor in and of itself does not completely dispose of this case. Instead, they just ignore/deny the existence of unlawful immigration status bar and concentrate on their own interpretation of § 1255(c)(2). This omission is not one the Court can make because it is not one the Government made. The Government clearly set out in its original denial letter, as well as its letter denying Anastasiia's Motion to Reopen, that one of the reasons for denying her application was she had no lawful immigration status. For convenience the Court quotes only the latter:

> The INA 245(c)(2) bar requires *that you be in lawful immigration status on the date of filing form I-485 and that you have maintained lawful status since each of your entries into the United States. INA 245(c)(2) states in pertinent part that any alien "who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States" is barred from adjusting status under INA 245(a).*
>
> DHS's regulations at 8 CFS 245.1(d)(1) (and the corresponding Executive Office for Immigration Review (EOIR) regulations at 8 CFR 1245.1(d)(1)) define "lawful immigration status" for purposes of INA 245(c)(2), as limited to six categories: (i) lawful permanent residents; (ii) nonimmigrants in valid unexpired status; (iii) refugees; (iv) asylees; (v) parolees in valid unexpired status; and (vi) aliens eligible for the benefits of Public Law 101-238 (the Immigration Nursing Relief Act of 1989) who filed an adjustment application on or before October 17, 1991.
>
> This definition clearly excludes applicants for asylum (not those who have been granted refugee or asylee status within the scope of the INA). This definition of "lawful immigration status" is clear, specific, and absolute in the context of INA 245(c)(2). *You have no legal basis for a claim that filing your asylum application prior to the expiration of your nonimmigrant status results in an effective extension of that lawful nonimmigrant status.*

(Doc. No. 15, Ex. 1 at 2-3; *see also* Ex. B at 7-13) (emphasis added).

Clearly neither plaintiff held lawful immigration status on the date that the diversity application was filed and it was rightly denied.

6

The Plaintiffs' arguments to this Court concentrate on the interpretation of the excusal language of the failure to maintain lawful status bar—the language that states "other than through no fault of his own or for technical reasons." As the Court has noted, this language—assuming hypothetically that the Plaintiffs qualified under it—does not appear in the unlawful immigration status at the time of filing bar. Consequently, even if their non-compliance with respect to their failure to maintain continuous legal status was excused, it could not be excused for their failure to have the appropriate status when the applications were filed. This finding, in and of itself, resolves this case.

The Court, nonetheless, will address the Plaintiffs' argument that their noncompliance to the failure to maintain lawful status bar was excused. The Plaintiffs argue that "inaction" by USCIS on their asylum claims is the reason they lacked lawful status and were unable to maintain continuous lawful status. Defendants point out the permitted technical reasons set out in the Code of Federal Regulations all are minor procedural glitches or they cover situations where an applicant was prevented with compliance due to incapacity. 8 C.F.R. § 245.1(d)(2).

Plaintiffs' interpretation is unreasonable. It would put all of the burden on the Defendants for Plaintiffs' own non-compliance. Moreover, it is the equivalent of converting the mere filing of an asylum application into *de facto* legal status. Such a result was not intended by Congress, not supported by the statutory and regulatory language, or by common sense.

This Court need not look far to find support for the proposition that the Government acted appropriately in the handling of this matter. In *Kavafoglu v. Nielson*, 18-CV-3512 (S.D. Tex., Jan. 11, 2019), Judge Hoyt faced a similar case and made a similar decision. His concise legal conclusions are appropriate here as well:

> In order for the plaintiffs to prevail on their claim, they must establish that the decision of the USCIS was "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Sierra Club v. Peterson*, 185 F.3d 349, 368 (5th Cir. 1999), *on reh'g en banc*, 228 F.3d 559 (5th Cir. 2000) ("[*D*]*e novo* review of agency adjudications has virtually ceased to exist. In its stead, the 'arbitrary and capricious' standard of review of 5 U.S.C. § 706(2)(A) is now applied to review of agency determinations in the adjudicatory setting."). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). This Court is of the opinion that the USCIS's decision with regard to the matter *sub judice* was not arbitrary, capricious, an abuse of discretion or violative of the law. The Court's rationale for its conclusion is set forth below.

First, the plaintiffs did not have "lawful" immigration status on August 10, 2018—the day that they submitted their application for adjustment of status. *See* 8 C.F.R. § 245.1(d)(1). It is undisputed that the plaintiffs' last "lawful" immigration status was that of a "non-immigrant visitor" from April 23, 2016, through October 22, 2016. Notwithstanding the aforementioned, the plaintiffs failed to request or obtain any new, lawful status or maintain their pre-existing B-1/B-2 visitor visas prior to their respective expiration dates. Although the record reflects that an asylum application was filed on July 1, 2016, which encompassed the entire family, the plaintiffs mere filing of that application, without more, did not create or establish any new, "lawful" status on their behalf. *See Dhuka v. Holder*, 716 F.3d 149, 156 (5th Cir. 2013).

The Seventh Circuit has also addressed this circumstance. In *Chandhry v. Holder*, the Seventh Circuit explained that "unlawful presence" and "unlawful status" are not synonymous concepts. *See* 705 F.3d 289, 292 (7th Cir. 2013). Therefore, case law, as well as the statute and regulation, make it clear that the plaintiffs were ineligible to file an application for adjustment of status on August 10, 2018, because they were not in a "lawful" immigration status at the time as defined by § 1255(c)(2). Instead, pursuant to an exercise of discretion by an USCIS official, they were granted permission to remain in the U.S. during the pendency of their asylum application. The USCIS's authorization in this regard does not equate to a right protected by law during the pendency of their asylum application sufficient to confer "lawful" immigration status. *See Dhuka*, 716 F.3d at 156.

(18-CV-3512, Doc. No. 19 at 5-6) (footnote omitted).

This Court finds the Plaintiffs never had lawful immigration status after the expiration of their tourist visas, and as such they did not have that status when the diversity lottery application

was filed. Further, they did not maintain lawful status continuously since entry into the United States as their tourist visas expired in 2017, and they have never had lawful status since that expiration. Either one of these findings would support the Defendants' actions. As it is, both support it. Finally, this Court does not find that any alleged inaction by the Government, if any, contributed to or constituted a technical reason for the Plaintiffs' failure to maintain lawful status.

The actions taken by the Defendants were not arbitrary or capricious. The Defendants did not abuse their discretion or otherwise act in a manner contrary to law. In fact, had they adopted Plaintiffs' arguments, they would have been acting contrary to well-established law. The Motion to Dismiss (Doc. No. 20) is granted and the case is dismissed with prejudice.

SIGNED at Houston, Texas this 19th day of June, 2020.

Andrew S. Hanen
United States District Judge